IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

YISARIS QUILES AVILES

    Debtor

YISARIS QUILES AVILES

    Plaintiff

     vs.

CITY OF PHILADELPHIA WATER
REVENUE BUREAU

    Defendant

CASE NO. 12-00664 (ESL)

CHAPTER 13

ADV. PROC. NO. 14-00285 (ESL)

OPINION AND ORDER

This adversary proceeding is before the court upon the *Motion to Dismiss and Memorandum in Support* (the "*Motion to Dismiss*", Docket No. 11) filed by the defendant City of Philadelphia alleging that: (a) the Plaintiff has not established *in personam* jurisdiction against it nor has she established "a *prima facie* showing that this court's long-arm statute and the Due Process Clause of the Fourteenth Amendment are satisfied" (id., p. 3); and (b) the Plaintiff fails to state a claim upon which relief may be granted because it is a "governmental unit" and, "as such, is protected by Sovereign Immunity under the Eleventh Amendment and Bankruptcy Code … 11 U.S.C. §§ 101(27) and 106" (id., p. 4). Also before the court is the *Opposition to Motion to Dismiss* (Docket No. 22) filed by the Plaintiff arguing she properly established *in personam* jurisdiction and that her "Complaint adequately pleads a cause for willful violation of the discharge injunction and for injunctive relief and civil contempt" (id., p. 15, ¶ 33). For the reasons stated herein, the *Motion to Dismiss* (Docket No. 11) is hereby denied as to the lack of *in personam* jurisdiction but granted in regards to the dismissal of the emotional distress and punitive damages.

-1-

Procedural and Factual Background

On January 31, 2012, the Plaintiff filed a Chapter 7 bankruptcy petition. See Lead Case Docket No. 1. In *Schedule A*, she disclosed having an ownership interest in the following two properties: (1) 5838 Oakland Street, Philadelphia, PA (the "Oakland St. Property"); and (2) 114 E. Tioga Street, Philadelphia, PA (the "Tioga St. Property"). See Lead Case Docket No. 1, p. 18. In *Schedule F*, she reported an unsecured debt with the Water Revenue Bureau of the City of Philadelphia (the "City of Philadelphia" or "City") in the amount of $584.66 (id., p. 30). The City of Philadelphia was notified of the bankruptcy petition (id., p. 45, and Lead Docket No. 7).

On March 2, 2012, the Chapter 7 Trustee abandoned the Oakland St. Property pursuant to Section 544(a) of the Bankruptcy Code. See Lead Case Docket No. 11.

On May 9, 2012, the court entered the *Discharge of Debtor* (Lead Case Docket No. 18).

On November 16, 2014, the City of Philadelphia issued an invoice to the Plaintiff in the total amount of $2,687.19 comprising: (a) previous account balance in the amount of $2,631.69; (b) a late payment penalty in the amount of $27.35; (c) current charges in the amount of $14.15; (d) and another penalty in the amount of $14.00. See Docket No. 24, p. 3.

On September 16, 2014, the Plaintiff filed a *Motion to Reopen Case to Permit to File an Adversary Proceeding for Contempt and Violation of the Discharge Injunction* (Lead Case Docket No. 22), which the court granted on November 6, 2014 (Lead Case Docket No. 25).

On December 8, 2014, the Plaintiff filed an adversary proceeding through the instant *Complaint* alleging that the City of Philadelphia willfully violated the discharge injunction and order by "issuing collection letters to the Debtor after the date of the Discharge Order" (Docket No. 1, p. 6, ¶ 13). She claims: (*i*) actual and compensatory damages in an amount no less than $10,000 (for mental anguish, suffering, physical harm and out-of-pocket expenses and time lost defending against the alleged violations); (*ii*) punitive damages in an amount no less than $10,000; and (*iii*) legal costs, expenses and attorneys' fees.

On January 19, 2015, the City of Philadelphia filed the *Motion to Dismiss and Memorandum in Support* (Docket No. 11) alleging that the Plaintiff: (a) has not established *in*

*personam* jurisdiction against it nor has she established "a *prima facie* showing that this court's long-arm statute and the Due Process Clause of the Fourteenth Amendment are satisfied" (id., p. 3); and (b) fails to state a claim upon which relief may be granted because it is a "governmental unit" and, "as such, is protected by Sovereign Immunity under the Eleventh Amendment and Bankruptcy Code … 11 U.S.C. §§ 101(27) and 106" (id., p. 4).

After requesting and receiving an extension of time[1], on February 17, 2015, the Plaintiff filed an *Opposition to Motion to Dismiss* (Docket No. 22) arguing she had established *in personam* jurisdiction and that her "Complaint adequately pleads a cause for willful violation of the discharge injunction and for injunctive relief and civil contempt" (id., p. 15, ¶ 33).

On March 9, 2015, the City of Philadelphia filed a *Reply to … Opposition to Motion to Dismiss* (Docket No. 27) alleging that: (a) under Pennsylvania's Municipal Claims and Tax Lien Act, water and sewer usage assessments are liens against the property when assessed under 53 P.S. § 7106(a); (b) the real property where the water services are provided is in Philadelphia, Pennsylvania; (c) the City of Philadelphia retains a claim for the continuing unpaid and accruing water and sewer assessments and therefore may continue to seek collection of same; (d) merely sending a bill to the Plaintiff is not sufficient "minimum contacts" to create jurisdiction over a non-resident defendant like the City of Philadelphia; (d) the Plaintiff has failed to show the City of Philadelphia had the minimum contacts necessary for this court to *in personam* jurisdiction over it; (e) the property and any witnesses that may be called forward are all located in the Commonwealth of Pennsylvania; (f) the Discharge Order of the Plaintiff's personal debts did not affect the City of Philadelphia's liens for the unpaid water and sewer usage assessments against the real property; (g) notices of assessments and changes in assessments for secured amounts do not violate the Bankruptcy Code; (h) the City of Philadelphia did not violate Section 524 of the Bankruptcy Code by sending bills for water and sewer usage to the Plaintiff; (i) because Section 106 of the Bankruptcy Code preserves the City of Philadelphia's sovereign immunity, which the City has not waived, the Plaintiff is unable to state a claim which would

---

[1] See Docket Nos. 17 and 20.

-3-

allow for the recovery of damages for emotional distress; (j) a Bankruptcy Court may issue an order against a governmental unit, but not for punitive damages pursuant to 11 U.S.C. § 106(a)(3); and (k) costs and attorney fees should not be awarded for prosecuting a damages action arising from an alleged violation of the discharge injunction.

On March 31, 2015, the Plaintiff filed a *Sur-Reply in Opposition to Motion to Dismiss* alleging that the City of Philadelphia has sufficient contracts with the United States to be subject to the Bankruptcy Court's *in personam* jurisdiction because it is "as American as apple pie" (Docket No. 32, p. 32, p. 3, ¶ 7).

Jurisdiction and Venue

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2). A core proceeding, for bankruptcy jurisdictional purposes, is an action that has as its foundation the creation, recognition, or adjudication of rights that would not exist independent of a bankruptcy environment." In re Med. Educ. & Health Servs., Inc., 459 B.R. 527, 545 (Bankr. D.P.R. 2011) (citations and quotations omitted). A "violation of the discharge injunction [dispute] is a core proceeding." Ricketts v. Bank of Am. Co. (In re Ricketts), 2013 Bankr. LEXIS 5392 at *13, 2013 WL 6858941 at *5 (Bankr. D.N.H. 2013). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409 and uncontested.

Applicable Law and Analysis

*(A)     Motion to Dismiss under Fed. R. Civ. P. 12(b)(2)*

The City of Philadelphia claims that the Plaintiff has not established *in personam* jurisdiction because "the Complaint provides no assertions of actions by the City within Puerto Rico to establish the minimum contacts necessary for personal jurisdiction" (Docket No. 11, p. 3). The City of Philadelphia does not contest the validity of the service of the summons.

Pursuant to Fed. R. Civ. P. 12(b)(2), applicable in bankruptcy adversary proceedings through Fed. R. Bankr. P. 7012, a party may request the dismissal of a complaint for "lack of personal jurisdiction".

-4-

Fed. R. Bankr. P. 7004(f) provides as follows:

*Personal Jurisdiction*.   If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

In Enron Corp. v. Arora (In re Enron Corp.), 316 B.R. 434, 444-446 (Bankr. S.D.N.Y. 2004), the court explained as follows:

After the 1996 Amendments [to Fed. R. Bankr. P. 7004(f)], courts have recognized in federal question cases that no inquiry into a defendant's "minimum contacts" with the forum state is needed to exercise jurisdiction pursuant to Bankruptcy Rule 7004; rather, only a federal "minimum contacts" test is required, whereby the Fifth Amendment's Due Process Clause limits a bankruptcy court's exercise of personal jurisdiction over a defendant.  Nationsbank, N.A. v. Macoil, Inc. (In re Med-Atlantic Petroleum Corp.), 233 B.R. 644, 653 (Bankr. S.D.N.Y. 1999); see Owens-Illinois, Inc. v. Rapid American Corp. (In re Celotex Corp.), 124 F.3d 619, 630 (4th Cir. 1997) (reviewing the initial clause of Bankruptcy Rule 7004(f) and noting that "on the topic of whether the exercise of personal jurisdiction over [the defendant] is consistent with the Constitution and the laws of the United States, the question of whether [the defendant] had minimum contacts with [the forum state] is irrelevant … because when an action is in federal court on related to' jurisdiction, the sovereign exercising authority is the United States, not the individual state where the federal court is sitting" and, therefore, a court "need only ask whether [the defendant] has the minimum contacts with the United States such that subjecting it to personal jurisdiction does not offend the Due Process Clause of the Fifth Amendment to the United States Constitution."); see also Federal Fountain, Inc., 165 F.3d at 602 (finding that a defendant in a bankruptcy-related action in federal district court had sufficient contacts with the United States to support personal jurisdiction over him by the district court and noting that Bankruptcy Rule 7004(d)'s nationwide service of process "is a constitutional exercise of congressional authority.").  Specifically, the Fifth Amendment's Due Process Clause "requires only that the defendant have the requisite minimum contacts' with the United States, rather than with [the forum state]." Med-Atlantic Petroleum, 233 B.R. at 653; see generally Stafford v. Briggs, 444 U.S. 527, 554, 63 L. Ed. 2d 1, 100 S. Ct. 774 (1980) (Justice Stewart, in a dissenting opinion joined by Justice Brennan, reviewing whether "traditional notions of fair play and substantial justice inherent in the Due Process Clause of the Fifth Amendment … limit the exercise of congressional power to provide for nationwide *in personam* jurisdiction" and noting that "due process requires only certain minimum contacts between the defendant and the sovereign that has created the court."); Medical Mut. of Ohio v. DeSoto, 245 F.3d 561, 567-568 (6th

Cir. 2001) (noting with regard to an ERISA nationwide service of process provision that "when a federal court exercises jurisdiction pursuant to a nationwide service of process provision, it is exercising jurisdiction for the territory of the United States and the individual liberty concern [under the Due Process Clause of the Fifth Amendment] is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States."). Although [defendant] as a former employee of Enron in Texas and current resident of Alabama might not have the requisite minimum contacts with New York, he did not argue that he was improperly served and he clearly has sufficient contacts with the United States for the Court to exercise personal jurisdiction over him pursuant to Bankruptcy Rule 7004(f).

The instant *Complaint* hinges on an alleged violation of the discharge injunction afforded under a federal statute, to wit, Section 524 of the Bankruptcy Code, 11 U.S.C. § 524. This court follows the reasoning in In re Enron Corp., *supra*. Therefore, the City of Philadelphia's motion to dismiss based on lack of *in personam* jurisdiction under Fed. R. Civ. P. 12(b)(2) is hereby denied.

*(B)     Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)*

"The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." Velez-Arcay v. Banco Santander de P.R. (In re Velez-Arcay), 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir.1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". Surita-Acosta v. Reparto Saman Inc. (In re Surita-Acosta), 464 B.R. 86, 90 (Bankr.D.P.R. 2012). Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct

-6-

alleged. Id. at 556. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the U.S. Court of Appeals for the First Circuit (the "First Circuit") established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one: isolate legal conclusions. Step two: take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. Also see Pérez v. Rivera (In re Pérez), 2013 WL 1405747 at *3, 2013 Bankr. LEXIS 1561 at **9-10 (Bankr.D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012).

"Simply because the court is hesitant to dismiss a claim in the early sta[g]es of litigation, however, does not mean that there are not circumstances where the court can and should act. Rule 12(b)(6) weeds out those allegations that, even with further factual development, will never grow into sustainable claims under the law." Arruda v. Sears, Roebuck & Co., 273 B.R. 332, 340 (D.R.I. 2002). As the First Circuit has stated, "in the menagerie of the Civil Rules, the tiger patrolling the courthouse gates is rather tame, but 'not entirely … toothless.'" Correa v.

Arrillaga, 903 F.2d 49, 52 (1st Cir. 1990), quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

The court proceeds to separately consider the City of Philadelphia's arguments for dismissal of damages under the scope of Fed. R. Civ. P. 12(b)(6).

*(C)    Violations to the Discharge Injunction*

"Under § 524(a)(2), a discharge operates as an injunction against the enforcement of any discharged debt as a personal liability of the debtor, including the continuation of legal process, offsets, or other collection efforts against the debtor, even if the debtor waived the right to discharge with respect to the debt." Whitman-Nieves v. P.R. Fed. Credit Union (In re Whitman-Nieves), 519 B.R. 1, 10 (Bankr. D.P.R. 2014), quoting from Hon. Nancy C. Dreher, Hon. Joan N. Feeney and Michael J. Stepan, Esq., Bankruptcy Law Manual § 8:2 Vol. 2 (5th ed. 2013-1), pp. 7-9. In other words, "a discharge in bankruptcy relieves a debtor from all pre-petition debt, and § 524(a) permanently enjoins creditor actions to collect discharged debts". Bessette v. Avco Fin. Services, Inc., 230 F. 3d 439, 444 (1st Cir. 2000), cert. denied, 532 U.S. 1048, 121 S. Ct. 2016, 149 L. Ed. 2d 1018 (2001).

"[A] bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor *in personam*-while leaving intact another-namely an action against the debt *in rem*." Johnson v. Home State Bank, 501 U.S. 78, 84 (1991). "Bankruptcy law treats debts for which the debtor is not personally liable differently. These are debts where the creditor has a secured interest in property". Arruda v. Sears, Roebuck & Co., 273 B.R. 332, 343 (D.R.I. 2002). Also see 11 U.S.C. § 524(a)(2). "Unlike personal debts, secured claims may be able to ride through bankruptcy unaffected by the discharge injunction. [A] creditor's right to foreclose on a lien survives bankruptcy notwithstanding the discharge of personal liability." Vélez-Fonseca v. Gov't Emples. Ass'n (AEELA) (In re Vélez-Fonseca), 2015 Bankr. LEXIS 1553 at **12-13, 2015 WL 2194474 at *5 (Bankr. D.P.R. 2015) (Cabán, B.J.), citing Johnson v. Home State Bank, 501 U.S. at 82-83.

In In re Vélez-Fonseca, the plaintiff alleged that the creditor, the Puerto Rico Association of Employees ("AEELA"), violated the discharge injunction for having sent two letters to the plaintiff's former employer after a discharge order had been entered in his Chapter 7 bankruptcy case to collect against the collateral *in rem*, to wit, the vacation and sick leave licenses, which guaranteed the plaintiff's loan pursuant to the statutory lien in 3 L.P.R.A. § 862f.  The court concluded as follows:

> Since AEELA has a valid statutory lien that secures the loans provided to the Plaintiff, it is allowed to proceed against the collateral to collect on its claim up to the amount of collateral available.  The two letters sent by AEELA to the Municipality of Caguas clearly stated that they were not an attempt to collect on plaintiffs' personal debts but to collect against the collateral "*in rem*."  The fact that AEELA had notice of the entry of discharge is inconsequential since it would not bar AEELA from acting as it did.  Therefore, AEELA's actions did not violate the discharge injunction and it may proceed "*in rem*" against the collateral that secures its debts but limited to the amounts of its collateral since Plaintiff's personal debts have been discharged.

> In re Vélez-Fonseca, 2015 Bankr. LEXIS 1553 at *27, 2015 WL 2194474 at *8.

But violating the discharge injunction of *in personam* debts is different.  In Delgado Laboy v. FirstBank P.R. (In re Delgado Laboy), 2010 Bankr. LEXIS 345 at **15-18, 2010 WL 427780 at **5-6 (Bankr. D.P.R. 2010) (Lamoutte, B.J.), the court summarized the effect of the discharge injunction in Section 524(a)(2) of the Bankruptcy Code as follows:

> The effect of a bankruptcy discharge is that it "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. § 524(a)(2).  The discharge injunction is the mechanism which allows the debtor to commence debt-free his or her fresh start.  See In re Latanowich, 207 B.R. 326, 334 (Bankr. D. Mass. 1997) ("The purpose of the permanent injunction set forth at § 524(a)(2) and reiterated in the discharge order is to effectuate one of the primary purposes of the Bankruptcy Code: to afford the debtor a financial fresh start."); Green v. Welsh, 956 F.2d. 30, 33 (2nd Cir. 1992); Baker v. Sommerville Mun. Fed. Credit Union (In re Baker), 2006 Bankr. Lexis 3183 (Bankr. D. Mass. 2006).  The discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as; letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment.  See Alan N.

-9-

Resnick & Henry J. Sommer, 4 <u>Collier on Bankruptcy</u> ¶ 524.02[2] (15th ed. 2009); <u>Ung v. Boni (In re Boni)</u>, 240 B.R. 381, 384 n.5 (B.A.P. 9th Cir. 1999). Moreover, "[c]reditors are obligated to maintain procedures to ensure that they do not violate section 524, and may be held liable for damages and attorney's fees if they do not." Alan N. Resnick & Henry J. Sommer, 4 <u>Collier on Bankruptcy</u> ¶ 524.02[b] (15th ed. 2009). <u>See</u> <u>In re Roush</u>, 88 B.R. 163, 165 (Bankr. S.D. Ohio 1988); <u>Faust v. Texaco (In re Faust)</u>, 270 B.R. 310, 317 (Bankr. M.D. Ga. 1998); <u>In re Nassoko</u>, 405 B.R. 515, 521 (Bankr. S.D.N.Y. 2009). "Although § 524(a), which establishes the discharge injunction, does not include a specific provision setting out available remedies for violations of the discharge injunction, bankruptcy courts invoke § 105(a), which grants bankruptcy court's broad equitable powers, to enforce the discharge injunction, using the mechanism of civil contempt action." <u>Parker v. Boston Univ. (In re Parker)</u>, 334 B.R. 529, 537-538 (Bankr. D. Mass. 2005). <u>See</u> <u>U.S. v. Rivera Torres (In re Rivera Torres)</u>, 309 B.R. 643,647 (B.A.P. 1st Cir. 2004); <u>In re Pratt</u>, 324 B.R. [1, 5 (Bankr. D. Me. 2005)]; <u>Bessette v. Avco Fin. Servs., Inc.</u>, 230 F. 3d [at] 445 [].

The standard for a willful violation of the discharge injunction under § 524(a)(2) is met if the defendant had knowledge of the discharge injunction and the same intended the actions which constituted the violation. <u>See</u> <u>Fleet Mortg. Group, Inc. v. Kaneb</u>, 196 F. 3d 265, 268 (1st Cir. 1999); <u>In re Pratt</u>, 462 F. 3d at 21 (1st Cir. 2006); Alan N. Resnick & Henry J. Sommer, 4 <u>Collier on Bankruptcy</u> ¶ 524.02[2][c] (15th ed. 2009). The defendant must have actual or constructive knowledge of the discharged debt for the knowledge requirement to be satisfied. <u>See</u> <u>Torres v. Chase Bank U.S.A., N.A. (In re Torres)</u>, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007). Civil contempt must be proven by clear and convincing evidence. <u>Ellis v. Dunn (In re Dunn)</u>, 324 B.R. 175, 179 (D. Mass. 2005).

<u>Also see</u> <u>Collins v. Wealthbridge Mortg. Corp. (In re Collins)</u>, 474 B.R. 317, 320 (Bankr. D. Me. 2012) ("A creditor violates the discharge injunction when it: (1) commits an act that violates the discharge injunction with the general intent to commit the act and (2) acts with knowledge of the discharge order.")

The court will apply the two-prong test established by the First Circuit in <u>Fleet Mortg. Group, Inc. v. Kaneb</u>, 196 F. 3d at 268, and <u>In re Pratt</u>, 462 F. 3d at 21, to determine if there was a willful violation to the discharge injunction in the instant case. "To be contumacious, the creditor's action must operate to coerce or harass the debtor improperly." <u>In re Collins</u>, 474 B.R. at 320. In the First Circuit, "courts are to use an objective test in determining whether a creditor's actions were improperly coercive under the circumstances." <u>Lumb v. Cimenian (In re Lumb)</u>, 401 B.R. 1, 6 (B.A.P. 1st Cir. 2009). In <u>Pratt</u>, the First Circuit defined the "objectively coercive" standard explaining that "even legitimate state-law rights exercised in a coercive

manner might impinge upon the important federal interest served by the discharge injunction, which is to ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debts."  462 F.3d at 19.  "While there appears to be no parallel First Circuit definition for harassment, Congress clearly intended that any behavior engaged in by a creditor that pressures a debtor to repay a discharged debt in any way is prohibited by § 524". In re Collins, 474 B.R. at 320, citing Senate Report No. 95-989 ("[11 U.S.C. § 524(a)] has been expanded ... to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employers, harassment, threats of repossession, and the like.  The change is ... intended to insure that once a debt is discharged, the debtor will not be pressured *in any way* to repay it.").  In each case, the conduct of the imputed discharge violation must be assessed "in the context of its particular facts."  In re Schlichtmann, 375 B.R. 41, 95 (Bankr. D. Mass. 2007), citing Pratt, 462 F.3d at 19.

In the instant case, the Plaintiff avers that that the City of Philadelphia "wilfully violated the injunction and discharge order by issuing collection letters to the Debtor after the date of the Discharge Order", which "caused significant aggravation, mental anxiety and stress and other damages, including the need to retain counsel to prosecute the discharge violation".  *Complaint*, Docket No. 1, p. 6, ¶¶ 13-14.  The City of Philadelphia sustains that "even if [such] collection letters [were sent] to the Debtor, the City did not violate the Discharge Injunction because it maintains a claim against the Debtor for the accruing water and sewer assessment".  *Motion to Dismiss*, Docket No. 11, p. 4.  The City of Philadelphia further contends that "[a]lthough Plaintiff received a discharge of her personal debts, this did not affect the City's liens for the unpaid water and sewer usage assessments against the Oakland St. Property" (Docket No. 27, p. 3, ¶ 11).  Hence, the City requests the dismissal of the *Complaint* based on those premises.  See Docket No. 11, p. 4.

The City of Philadelphia, however, has not placed the court in position to determine if its claim is secured or not at this juncture.  It has not provided the legal provision(s) or basis for its contention that it has a statutory lien, nor has it submitted and/or referenced any evidence to

-11-

that extent.  Likewise, the Plaintiff has not submitted and/or referenced the "collection letters" she avers in her *Complaint* (Docket No. 1, p. 6, ¶ 13).  Collection *in rem* of secured claims does not violate the discharge injunction.  Collection of personal liability may violate the discharge injunction.  Therefore, the City of Philadelphia's request to dismiss the *Complaint* for failing to state a violation of the discharge order under Fed. R. Civ. P. 12(b)(6) is hereby denied.

*(D)      Emotional Distress Damages Against a Governmental Unit*

The Plaintiff seeks an award in damages for emotional distress.  See the *Complaint*, Docket No. 1, p. 7, ¶ 22.  She also requests "the Court to impose punitive damages in an amount not less than $10,000 dollars" pursuant "to 11 U.S.C. § 105" (Docket No. 1, p. 7, ¶¶ 24 and 26).

Notwithstanding the Bankruptcy Court's power to award damages under 11 U.S.C. § 524 and its statutory contempt powers under 11 U.S.C. § 105(a), a court may not award damages against a governmental unit unless sovereign immunity has been expressly and unequivocally waived.  See United States v. Nordic Village, Inc., 503 U.S. 30, 33, 112 S. Ct. 1011, 117 L. Ed. 2d 181 (1992); Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 95, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)) ("Waivers of the Government's sovereign immunity … must be 'unequivocally expressed' … [and] are not generally to be 'liberally construed.'"); Duby v. United States (In re Duby), 451 B.R. 664, 670-671 (B.A.P. 1st Cir. 2011).   Waivers of inmmunity must be strictly construed in favor of the sovereign, Orff v. United States, 545 U.S. 596, 601-602, 125 S.Ct. 2606, 162 L.Ed.2d 544 (2005), and ambiguities must be resolved in favor of immunity, United States v. Williams, 514 U.S. 527, 530, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995).

A "governmental unit means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government".  11 U.S.C. § 101(27).  The County and City of Philadelphia have been consolidated pursuant to the Act of August 26, 1953 (P.L. 1476, No. 433), which was enacted

"…to carry out the intent and purpose of Article XV, Section 1, of the Constitution of Pennsylvania, known as the 'Home Rule Amendment,' and Article XIV, Section 8, of the Constitution of Pennsylvania, known as the 'City-County Consolidation Amendment,' …". The Commonwealth of Pennsylvania has not surrendered its sovereignty immunity pursuant to the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541, which states as follows:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.
>
> 42 Pa.C.S.A. § 8541

Therefore, the court finds that the City of Philadelphia is "government unit" for bankruptcy purposes.

Section 106 of the Bankruptcy Code states as follows:

**Waiver of sovereign immunity**

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105 [power of the court], 106 [waiver of sovereign immunity] [and] 524 [effect of discharge], of this title.

…

(3) **The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, <u>but not</u> <u>including</u> <u>an</u> <u>award</u> <u>of</u> <u>punitive</u> <u>damages</u>**.  Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of Section 2412 (d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

11 U.S.C. § 106(a) (emphasis and underline added).

The court will now proceed to analyze if it may award emotional distress damages under Section 106(a)(3) of the Bankruptcy Code, *supra*.

In United States v. Rivera-Torres (In re Rivera-Torres), 432 F.3d 20, 23 (1st Cir. 2005), the First Circuit was presented with the controversy of "whether there is an explicit waiver of sovereign immunity in 11 U.S.C. § 106, as to allow an award of emotional distress damages against the United States, under the sanctions provisions of 11 U.S.C. § 105, to remedy a violation of 11 U.S.C. § 524, which enjoins actions to recover discharged debts."  The First Circuit considered that "none of the enumerated sections in § 106(a)(1) that apply directly (§§ 105, 524) or by analogy (§ 362) clearly established the availability, even against private parties, of an award of emotional distress damages in 1994 as a matter of background law.  Those sections do not provide a basis to find clear waiver of sovereign immunity as to emotional distress damages." Id. at 29.  "Performing a temporal analysis by which the First Circuit looked to the congressional understanding of the enumerated section at the time of its amendment, it reasoned that when Congress amended 11 U.S.C. § 106(a) in 1994, there was no consensus in the background law as to whether emotional distress damages were 'actual damages,' so reference to 11 U.S.C. §§ 105 and 524 [] did not 'clearly establish[] the availability, even against private parties, of an award of emotional distress damages.'"  In re Duby, 451 B.R. at 671, citing and analyzing In re Rivera-Torres, 432 F.3d at 28-29.  The First Circuit further considered the legislative history of Section 106 of the Bankruptcy Code and found that "the focus of Congress's concern was 'monetary recovery' of a distinctly different type than emotional distress damages.  The provision for waiver of sovereign immunity in the Bankruptcy Code was overhauled in 1994.'"  In re Rivera-Torres, 432 F.3d at 30, citing Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 113, 108 Stat 4106, 4117-18; Gibson, Congressional Response to Hoffman and Nordic Village: Amended Section 106 and Sovereign Immunity, 69 Am. Bankr. L.J. 311 (1995).

The First Circuit finally concluded as follows:

In the end, it is clear that Congress has not "definitely and unequivocally" waived sovereign immunity under § 106(a) of the Bankruptcy Code for emotional damages awards in circumstances such as these. **We hold, therefore, that sovereign immunity bars awards for emotional distress damages against the federal government under § 105(a) for any willful violation of § 524, and that immunity is not waived by § 106**.

If more were needed, and it is not, our view is also that recognizing a waiver of sovereign immunity for emotional distress damages in this case would run afoul of § 106(a)(5), which forbids the creation of any substantive claim for relief "not otherwise existing under this title, the Federal Rules of Bankruptcy, or non-bankruptcy law." 11 U.S.C. § 106(a)(5).

In re Rivera-Torres, 432 F.3d at 31 (emphasis added).

In short, "under established First Circuit precedent, emotional distress damages are unavailable against the United States" under Section 106(a) of the Bankruptcy Code. In re Duby, 451 B.R. at 672. Such precedent is transferrable to other "government units" like the City of Philadelphia pursuant to 11 U.S.C. § 106(a)(3). Therefore, this court concludes that pursuant to Section 106 of the Bankruptcy Code and First Circuit case-law, the Plaintiff is barred from an award of emotional distress damages as the action was brought against a governmental entity. Also see King v. United States (In re King), 396 B.R. 242, 251 (Bankr. D. Mass. 2008) ("the Court holds that the government has not 'definitively and unequivocally' waived its sovereign immunity for emotional distress damages awards under § 106(a) for willful violation of the automatic stay actions brought pursuant to § 362(k)(1)").

Therefore, the Plaintiff's request for emotional distress damages is hereby dismissed under Fed. R. Civ. P. 12(b)(6).

*(E)    Punitive Damages Against a Governmental Unit*

Similarly, this court lacks jurisdiction to impose punitive damages against a governmental unit like the City of Philadelphia under 11 U.S.C. § 106(a)(3) ("[t]he court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, **but not including an award of punitive damages**"). Also see Otero-Lopez v. Dep't of the Treasury of the Commonwealth of P.R. (In re Otero-Lopez), 492 B.R. 595, 609 (Bankr.

D.P.R. 2013) ("Consequently, this court lacks jurisdiction under 11 U.S.C. § 106 to impose punitive damages against the Commonwealth of Puerto Rico or its governmental units."); Carrasquillo-Gonzalez v. P.R. Treasury Dep't (In re Carrasquillo-Gonzalez), 2015 Bankr. LEXIS 2036 at *23 (Bankr. D.P.R. 2015) (same); Jiménez-García v. Dep't of Treasury (In re Jiménez-García), 2012 Bankr. LEXIS 5191 at *25 (Bankr. D.P.R. 2012) (same).

Therefore, the Plaintiff's request for punitive damages is hereby dismissed under Fed. R. Civ. P. 12(b)(6).

Conclusion

In view of the foregoing, after having isolated the legal conclusions, taken the *Complaint*'s well-pleaded (non-conclusory) allegations as true and drawing all reasonable inferences in favor of the Plaintiff to determine if they plausibly narrate a claim for relief, as mandated by Schatz v. Republican State Leadership Committee, 669 F.3d at 55, the *Motion to Dismiss* filed by the City of Philadelphia (Docket No. 11) is hereby denied as to the dismissal for lack of *in personam* jurisdiction and the dismissal of the *Complaint* for failing to state a violation of the discharge order but granted as to the dismissal for the claimed emotional distress and punitive damages under Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012.

SO ORDERED.

Partial judgment shall be entered accordingly.

In San Juan, Puerto Rico, this 1st day of July, 2015.

Enrique S. Lamoutte
United States Bankruptcy Judge